UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NORDIA TOMPKINS, | : | No. 3:22-cv-00339 (OAW) |
|     Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| TIMETHEA PULLEN, | : | |
| PATRICK MCFARLAND, AND | : | |
| MICHAEL CARVAJAL, | : | May 6, 2022 |
|     Respondents. | : | |

**RESPONDENTS' REPLY
TO PETITIONER'S OPPOSITION TO MOTION TO DISMISS**

In accordance with the Court's April 26, 2022 Order (ECF No. 20) and Local Rule 7(d), Respondents submit this reply to Petitioner's Memorandum in Opposition to Respondents' Motion to Dismiss (ECF No. 15) ("Opposition").

### I. Petitioner Has No Protected Liberty Interest In Remaining On Home Confinement Under The Due Process Clause

Citing *Young v. Harper* and *Kim v. Hurston*, Petitioner claims that "she has a liberty interest in remaining on home confinement under the Due Process Clause." (Opp. p. 5) Petitioner is wrong. Petitioner improperly conflates the liberty interest and corresponding Due Process rights afforded to parolees under court supervision at the conclusion of their custodial terms (the circumstances in *Morrissey*, *Harper*, and *Kim*), with those afforded to prisoners in the service of a current federal sentence (Petitioner's circumstances in this case).

In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court considered habeas petitioners' claims that their parole had been revoked without a hearing and that they were thereby deprived of due process. The Court defined "the nature of the interest of the parolee in his continued liberty"; *id.* at 482, and the minimal due process requirements that must be afforded to parolees in the context of parole revocation. *See id.* at 485-89.

In *Young v. Harper*, 520 U.S. 143 (1997), an Oklahoma state prisoner who had been released pursuant to a "preparole" conditional supervision program brought a writ of habeas corpus in state court after he was denied parole and ordered back to prison. The Supreme Court considered the parameters of the "preparole" program and concluded it was "no different from parole as we understood it in *Morrissey*"; and, on this basis, held that the same due process protections should apply. *Id.* at 145, 153.

In *Kim v. Hurston*, 182 F.3d 113 (2d Cir. 1999), a New York state prisoner brought an action against corrections personnel, alleging that her removal from a work release program without notice deprived her of due process. The Second Circuit considered the "final phase" of the work release program, "in which [Kim] lived at home and had a job," to be "virtually indistinguishable from either traditional parole or the Oklahoma program considered in *Young*"; the court concluded that "[w]hile participating in this [final phase of the work release program], Kim enjoyed a liberty interest, the loss of which imposed a sufficiently 'serious hardship' to require compliance with at least minimal procedural due process." *Id.* at 118.

Unlike the petitioners in *Morrissey*, *Harper*, and *Kim*, Petitioner in this case is (and at all relevant times has remained) a prisoner in the service of a current federal sentence. Petitioner is *not* a parolee. Petitioner was never admitted to a preparole or work release program. This distinction is paramount: Home Confinement is not analogous to parole. As a prisoner in the service of a current federal sentence, the location where Petitioner serves her federal sentence – be it a secure facility, RRC, or Home Confinement – is a matter left to the exclusive discretion of the BOP. Pursuant to 18 U.S.C. § 3621(b), it is for the BOP to "designate the place of the prisoner's imprisonment," and "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. §

3621(b); *see also id.* § 3624(c)(4); *United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995) (noting that courts have "no authority to order that a convicted defendant be confined in a particular facility" as "those decisions are within the sole discretion of the Bureau of Prisons"); *Hatch v. Lappin*, 660 F. Supp. 2d 104, 112 (D. Mass. 2009) ("inmate participation in a home confinement program is a 'privilege, not a right,' awarded entirely at the discretion of the BOP.").

Inasmuch as Petitioner is attempting to argue for expansion of *Morrissey* protections to the context of Home Confinement – *see* Opp. p. 5 (claiming that Petitioner's having resided with her children, attended a cosmetology program, and sought employment while on Home Confinement confers upon her some liberty interest) – her argument must fail. The rationale employed in *Morrissey*, *Harper*, and *Kim* does not extend to Home Confinement or to the facts of this case. Much of the Supreme Court's decision in *Morrissey* is dedicated to the function of parole in the correctional process. *See* 408 U.S. at 477-80. The *Morrissey* Court reasoned:

> [P]arole is an established variation on imprisonment of convicted criminals. Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. . . . The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.
>
> * * * *
>
> [The parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . .

*Id.* at 477, 482. *See also Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (explaining that *Morrissey* Court held that: "Weighing the interests of the state in returning a parolee who has violated the conditions of parole to prison against the parolee's liberty interest, the Court determined that the parolee must be accorded several rights before his parole status was

definitively revoked."). *Young* cites to *Morrissey*, and *Kim* to *Young*, for this same proposition. *See Young*, 520 U.S. at 147; *Kim*, 182 F.3d at 118.

By contrast, Petitioner was designated to Home Confinement under the CARES Act *because of the COVID-19 pandemic*.[1]  She was not designated to Home Confinement so that she could "reintegrate into society"; the designation was made to mitigate the risks of a global pandemic, at a time when there was no vaccine and the methodology for treatment of COVID-19 largely uncertain, with high rates of infection among inmates in secure custody.  Additionally, unlike a home confinement placement pre-pandemic, this home confinement placement was not at the very end of Petitioner's sentence.  Petitioner was not "free to be with family and friends"; she wore an ankle monitor and could not leave her home without express permission.  At all times, she remained subject to the BOP's inmate disciplinary policy and rigorous conditions of community supervision.  *See* Resps.' Mem. pp. 2-3.

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (internal quotation marks omitted).  Petitioner's redesignation from Home Confinement to secure custody, following her repeated misconduct, does not constitute such "atypical and significant hardship" that it deprived Petitioner of liberty triggering the procedural protections of the Due Process Clause.  Petitioner is in the service of a federal sentence, in the custody of the Attorney General.

---

[1] As a result of the COVID-19 pandemic, the CARES Act was passed and permits the BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624(c)(2), as it deems appropriate. Pub. L. 116-136, Div. B, Title II, § 12003(b)(2).  Importantly, neither 18 U.S.C. § 3624(c)(2) nor the CARES Act provides the judiciary with authority to grant an inmate home confinement in these circumstances.  *See* 18 U.S.C. § 3624(c)(2); CARES Act, § 12003(b)(2).  *See also*, *e.g.*, *Fairbanks*, 2021 WL 776982, at *3 ("the CARES Act did not give courts the authority to grant a prisoner's request for home confinement." (quoting *United States v. Green*, 466 F. Supp. 3d 328, 328 n.1 (W.D.N.Y. 2020)); *United States v. Ogarro*, No. 18-CR-373-9 (RJS), 2020 WL 1876300, at *6 (S.D.N.Y. Apr. 14, 2020) (the authority to "permit prisoners to finish the remainder of their sentence in home confinement" remained "exclusively within the discretion of the BOP").

While Petitioner would *prefer* to serve her sentence on Home Confinement, that is not her decision to make. Nor is it a decision for this honorable Court. It is a decision reserved to the BOP. In addition to the caselaw cited in Respondents' Memorandum at pp. 8-10, *see also*, *e.g.*, *United States v. Lopez-Pastrana*, 889 F.3d 13, 18 (1st Cir. 2018) ("Home confinement is treated as a form of 'custody' under federal law"); *Hatch*, 660 F. Supp. 2d at 111-12 (redesignation from home confinement to secure custody does not constitute "atypical and significant hardship" giving rise to constitutionally protected liberty interest); *Touizer v. U.S. Att'y Gen.*, No. 21-10761, 2021 WL 3829618, at *2 (11th Cir. Aug. 27, 2021) (district court properly dismissed habeas petition because it lacked authority to grant requested relief of ordering BOP to designate petitioner to home confinement; "Just as the BOP has the authority to release prisoners to home confinement, so too does it have the power to revoke that release. *See* 18 U.S.C. § 3624(g)(5)."); *Violette v. Pharos House*, No. 1:21-CV-00148-DBH, 2021 WL 3721815, at *1 (D. Me. Aug. 23, 2021) ("because Plaintiff was in custody while under home confinement with the ankle monitor, his Fourth Amendment interest is somewhat limited and the decision to revoke the home confinement and place Plaintiff in re-entry center for a period of time was within the discretion of the Bureau of Prisons"), *report and recommendation adopted*, No. 2:21-CV-148-DBH, 2021 WL 4144740 (D. Me. Sept. 10, 2021); *United States v. Mize*, No. 3:12-CR-137-TAV-HBG, 2021 WL 3891062, at *4 (E.D. Tenn. Aug. 31, 2021) ("Just as the Bureau of Prisons has the authority to place a defendant on home confinement, it also has the authority to revoke that privilege."); *Bailey v. Garrett*, No. 7:20-CV-1042-CLM-GMB, 2020 WL 8211453, at *3 (N.D. Ala. Dec. 15, 2020) ("the petitioner has no enforceable constitutional right to be released to home detention. The CARES Act does not alter the constitutional analysis. Nothing in the Act grants to the district courts the authority to release federal prisoners to home confinement."), *report and*

*recommendation adopted*, No. 7:20-CV-1042-CLM-GMB, 2021 WL 179613 (N.D. Ala. Jan. 19, 2021); *United States v. Perkins*, No. 14-CR-104-LM-1, 2020 WL 4783558 (D.N.H. Aug. 18, 2020) ("The decision whether to release defendant on home confinement under § 3642 is completely within BOP's discretion—even under the CARES Act"); *Vanover v. Gilley*, No. CV 6:20-124-WOB, 2020 WL 4718758, at *2 (E.D. Ky. Aug. 13, 2020) ("the decision to place an inmate in pre-release community confinement and/or home confinement is discretionary and will be 'determined on an individual basis' according to the factors in 18 U.S.C. § 3621(b). . . . Moreover, the BOP's placement decisions, including determinations regarding halfway house and RRC placement, are expressly insulated from judicial review, as the provisions of the Administrative Procedures Act ("APA") do not apply to such decisions.  28 U.S.C. § 3625 . . . . Thus, this Court cannot enter an order directing the BOP to immediately release Vanover to home confinement or a halfway house."); *United States v. Caiado*, No. 8:17-CR-561-T-17TGW, 2019 WL 5653810, at *2 (M.D. Fla. Oct. 31, 2019) ("The decision whether to place a prisoner in home confinement is solely within the discretion of the BOP and the Attorney General"); *Matlack v. Wiley*, No. CIV.A. 07-CV-01169WY, 2007 WL 4116017, at *2 (D. Colo. Nov. 16, 2007) (no due process violation where prisoner was redesignated from RRC to secure custody; "The Constitution itself does not provide a prison inmate with any liberty interest in his classification or placement because he is not entitled to any particular degree of liberty in prison.") (citing *Meachum v. Fano*, 427 U.S. 215, 224-225 (1976)).

> Our district court recently explained BOP's discretion regarding redesignation:
>
> As the Second Circuit has held, "[t]he BOP is the sole agency charged with discretion to place a convicted defendant within a particular treatment program or a particular facility." *Levine v. Apker*, 455 F.3d 71, 83 (2d Cir. 2006).  Pursuant to 18 U.S.C. § 3621(b), "[t]he [BOP] shall designate the place of the prisoner's imprisonment." In making such a designation, the BOP shall take into account various factors, including "the prisoner's security designation" and "other security

> concerns of the [BOP]." *Id.* Importantly, the BOP "may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another." *Id.* Section 3621(b) is clear that, "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under [§3621(b)] is not reviewable by any court." Indeed, "decisions regarding the adoption and execution of internal policies, including the discipline, care, and security of prisoners, ordinarily lie 'within the province and professional expertise of corrections officials.'" *United States v. Needham*, 460 F. Supp. 3d 323, 326 (S.D.N.Y. 2020) (quoting, in part, *Bell v. Wolfish*, 441 U.S. 520, 548 (1979)); *see also United States v. Kanagbou*, 726 F. App'x 21, 25 n.1 (2d Cir. 2018) ("[I]t is well established that the district court does not control how the Executive Branch carries out a defendant's sentence."). "[S]o long as it considers the factors enumerated in § 3621, the BOP's discretion in making prisoner classifications is virtually unfettered." *Pasonick v. Strada*, No. 12-CV-6204 SLT, 2013 WL 431332, at *3 (E.D.N.Y. Feb. 4, 2013) (internal quotation marks and citations omitted). "At most, a court finding that the BOP has failed to consider the § 3621 factors can direct the BOP to fulfill that statutory requirement," but "a court cannot make the designation itself." *Pasonick*, 2013 WL 431332, at *3 (internal quotation marks and citation omitted). Here, the record before the Court demonstrates that the BOP has determined, based on Petitioner's recent disciplinary issues and related security concerns--which are factors it properly considers under § 3621--that she should be redesignated to a different facility. Given the important security concerns involved in the BOP's determination, the Court should not and will not intrude on the BOP's § 3621 authority by restraining it from transferring Petitioner to a different facility.

*Brady v. Hess*, No. 3:21-CV-1671(SVN), ECF No. 55 (Apr. 19, 2022 order denying habeas petitioner's request for the Court to enjoin BOP from transferring her).

## II. Petitioner Is Not Entitled To *Morrissey* Process

Petitioner claims that Respondents "were required to provide the procedures set forth in *Morrissey v. Brewer*, 408 U.S. 471 (1972)" before returning Petitioner to secure custody at FCI Danbury (Opp. p. 7). This contention is wrong. Petitioner cites no binding precedent in support of her claim that "Home [C]onfinement is similar enough to the parole program in *Morrissey*, and the preparole program in *Young*, to require the due process guarantees mandated by the Supreme Court in those cases" (*see* Opp. p. 7), and Respondents are aware of none. Moreover, Petitioner's argument is premised on the incorrect assumption that Petitioner has a protected liberty interest in Home Confinement (*see id.*). As detailed above, and in

7

Respondents' Memorandum at pp.8-13, Petitioner has no such liberty interest; the procedural protections of the Due Process Clause set forth in *Morrissey* do not apply.

### III. Petitioner Fails To State A Claim Under *Accardi*

Petitioner's *Accardi* claim is, likewise, unavailing. Petitioner's argument (Opp. pp. 13-14) conflates discipline with redesignation. As to the discipline imposed for her third Code 309 violation,[2] Petitioner was afforded all process due under *Wolff v. McDonnell*, 481 U.S. 539 (1974). *See* Resps. Mem. pp. 4-6, 11-13. As to her redesignation from Home Confinement to FCI Danbury, Petitioner has no protected liberty interest and was owed no due process; Petitioner's place of confinement is a matter reserved to the BOP. *See* Resps. Mem. pp. 6, 8-10 and discussion *infra*.

### IV. Petitioner Fails To State A Claim Under The Rehabilitation Act

There is no valid Rehabilitation Act claim on these pleadings. In her Opposition, for the first time, Petitioner claims she was entitled to the assistance of counsel as a "reasonable accommodation" for her alleged disability, anxiety (Opp. pp. 14-15). Petitioner does not allege, and there is no proof that, she ever requested or was denied such "accommodation." Likewise, there is no allegation or proof that Petitioner exhausted this claim. As such, it should be dismissed. *See*, *e.g.*, *South v. Licon-Vitale*, No. 3:19-CV-1763 (VLB), 2020 WL 3064320, at *2 (D. Conn. June 9, 2020) (dismissing Rehabilitation Act claims for failure to exhaust administrative remedies).

---

[2] Petitioner has not exhausted administrative remedies with respect to her first or second Code 309 violations and cannot challenge them in this proceeding.

8

RESPONDENTS,
TIMETHEA PULLEN, WARDEN OF
FEDERAL CORRECTION INSTITUTE
AT DANBURY,
PATRICK MCFARLAND, RESIDENTIAL
REENTRY MANAGER, AND
MICHAEL CARVAJAL, DIRECTOR,
FEDERAL BUREAU OF PRISONS

By:

LEONARD C BOYLE,
UNITED STATES ATTORNEY

/s/ Jillian Rose Orticelli
Jillian Rose Orticelli (ct28591)
Assistant United States Attorney
450 Main Street, Rm. 328
Hartford, CT 06103
Tel.: (860) 947-1101
Fax: (860) 760-7979
Email: Jillian.Orticelli@usdoj.gov